STATE OF CONNECTICUT *v.* NA'IM B.[1]
(AC 26569)

Flynn, C. J., and Robinson and Stoughton, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued December 9, 2008—officially released April 21, 2009

*James B. Streeto*, assistant public defender, with whom was *Paul W. Summers*, assistant public defender, for the appellant (defendant).

*Timothy F. Costello*, deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Anne F. Mahoney*, senior assistant state's attorney, for the appellee (state).

*Opinion*

STOUGHTON, J. When this case first came before us, we reversed the judgment of conviction of one count of risk of injury to a child on the ground that the evidence was insufficient to support the verdict of guilty. Upon certification, our Supreme Court concluded that there was sufficient evidence to support the verdict, reversed this court's judgment and remanded the case to us for consideration of the remaining claims of the defendant, Na'im B.

The defendant's remaining claims are that the trial court (1) failed to disclose all relevant material following its in camera review of a file from the department of children and families (department), (2) improperly precluded testimony of a department investigator and (3) improperly precluded evidence of an earlier referral to the department of the victim's mother. We affirm the judgment of the trial court.

This case arose after the victim, a four month old child, who lived with his parents and two half-brothers, suffered third degree burns inflicted by a hair straightener, or flatiron, to his left hand. The relevant facts are

set out in prior decisions in this case by this court and our Supreme Court. See *State* v. *Na'im B.*, 101 Conn. App. 373, 921 A.2d 679 (2007), rev'd, 288 Conn. 290, 952 A.2d 755 (2008).

The state charged the defendant with two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1)[2] and one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[3] After a trial by jury, the defendant was found guilty of one count of risk of injury to a child, from which the defendant appeals, and not guilty of the other two counts. Having reviewed the defendant's remaining claims, we affirm the judgment of the trial court.

I

The defendant first claims that the court failed to disclose all relevant material following its in camera review of a department file and requests that this court review the documents contained in the file to determine if further disclosure is warranted. After reviewing those documents, we disagree with the defendant's claim.

The victim in this case is the child of the defendant and U, the victim's mother. See footnote 1. U has two other children, each older than the victim. Prior to January 13, 2003, the date of the incident, U and the other children had had some dealings with the department.

---

[2] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impart the health or morals of any such child . . . shall be guilty of a class C felony . . . ."

[3] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

Pursuant to a waiver executed by U, the department had provided defense counsel with confidential records for a period of time, commencing on January 13, 2003, through January 22, 2004. The prosecutor, pursuant to General Statutes § 17a-28,[4] obtained copies of the department records concerning the victim dated January 13, 2003, through January, 2005. Those records dated subsequent to January 22, 2004, were sealed and marked as court exhibit one. The court reviewed the records contained in court exhibit one in camera and disclosed some of them to the defendant as exculpatory material.[5]

"Our standard of review in determining whether a court properly conducted an in camera review of confidential records is abuse of discretion." (Internal quotation marks omitted.) *State* v. *Brisco*, 84 Conn. App. 120, 130–31, 852 A.2d 746, cert. denied, 271 Conn. 944, 861 A.2d 1178 (2004). "In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *State* v. *Gombert*, 80 Conn. App. 477, 498–99, 836 A.2d 437 (2003), cert. denied, 267 Conn. 915, 841 A.2d 220 (2004).

We conclude that the court did not abuse its discretion. After thoroughly reviewing all of the records contained in court exhibit one as requested by the defendant, we have determined that there are no

---

[4] General Statutes § 17a-28 (f) provides in relevant part: "The commissioner [of children and families] shall, upon request, promptly provide copies of [confidential] records, without the consent of a person, to . . . (2) the Chief State's Attorney or the Chief State's Attorney's designee, or a state's attorney for the judicial district in which the child resides or in which the alleged abuse or neglect occurred, or the state's attorney's designee, for purposes of investigating or prosecuting an allegation of child abuse or neglect . . . ."

[5] The potentially exculpatory records released to the defendant were marked as court exhibit 1a.

records containing exculpatory information that were not disclosed to the defense.

## II

The defendant next claims that the court improperly precluded certain testimony and that, in doing so, violated his constitutional right to present a defense. We disagree.

During its case-in-chief, the state presented evidence of the defendant's consciousness of guilt. The proffered evidence established that when the defendant was interrogated by the police, he offered several suggestions as to how the injury to the victim might have occurred. These were that (1) the victim burned his hand on the baseboard heater, (2) the victim's three year old half-brother had burned the victim with a cigarette lighter, (3) the defendant himself accidentally had burned the victim with a cigarette lighter and (4) the defendant accidentally had burned the victim while warming a baby bottle.

Near the close of the state's case, the defendant, through counsel, informed the court that he planned to call as his only witness Gloria Rodriguez, a department investigator. The court conducted a hearing on the admissibility of Rodriguez' testimony. In an offer of proof, the defendant stated that Rodriguez would testify that she visited the residence the day after the incident had occurred and that, while there, the three year old half-brother told her that he had burned the victim with a lighter and pointed to the top and the bottom of his hand to show where the burns were located. She also would testify that, at U's urging, the child demonstrated that he knew how to use a lighter.

The prosecutor stated that she would object to Rodriguez' testimony because it was inadmissible hearsay. The defendant replied that it was not hearsay because

he was not claiming the testimony for its truthfulness[6] but, rather, to prove that the utterance had been made by the three year old half-brother. The defendant claimed that the fact of the utterance having been made was relevant for two reasons: (1) to rebut evidence that he had made the statement to the police that the three year old half-brother had burned the victim and (2) it was evidence of consciousness of guilt. More specifically, he argued that Rodriguez' statement was relevant to show that someone other than the defendant had coached the three year old half-brother and that the jury might infer consciousness of guilt on the part of that other person.[7]

The court determined that the statement by itself was too speculative and did not tend to establish either claim. The court suggested that the defendant might call the three year old half-brother as a witness or that he might call other witnesses to establish the context of the proffered testimony and to show who was present and might have had an opportunity to coach the three year old half-brother. The defendant decided thereafter to call no witnesses.

"It is well established that a defendant has a right to introduce evidence that another person committed the offense with which the defendant is charged. . . . Third party suspect evidence is admissible if it *directly* connects the third party to the crime. . . . It is not enough [however] to show that another had the motive to commit the crime . . . nor is it enough to raise a

---

[6] There was no claim that the three year old half-brother, in fact, had caused the injury.

[7] The defendant argued at the hearing that he was "locked up" during the time that the three year old half-brother was allegedly coached and therefore was incapable of coaching the three year old. No evidence, however, was presented at trial establishing that the defendant was incarcerated or otherwise unavailable to coach the three year old.

bare suspicion that some other person may have committed the crime of which the defendant is accused. . . .

"[I]t is within the sound discretion of the trial court to refuse to admit such evidence when it simply affords a possible ground of possible suspicion against another person. . . . The trial court's ruling on the relevancy of third party inculpatory evidence will be reversed on appeal only if the court has abused its discretion or an injustice appears to have been done." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Francis*, 267 Conn. 162, 173–74, 836 A.2d 1191 (2003).

We conclude that the court properly acted within its discretion in refusing to admit the testimony of Rodriguez. We agree that Rodriguez' testimony, standing alone, was irrelevant because it was not claimed that the half-brother's statement was true and that, without context, the meaning ascribed to it by the defendant is mere speculation.

### III

Finally, the defendant claims that the court improperly precluded evidence that U previously had been referred to the department for failure to provide medication for sickle cell anemia to one of the victim's half-brothers. The defendant claims that his constitutional rights to cross-examine witnesses and to present a defense were violated because the precluded evidence was critical to impeach U's credibility and also to establish that U was the person who caused the injury to the victim and failed to seek medical attention. We disagree.

At a hearing prior to trial, the defendant, through counsel, moved the court for permission to introduce the following evidence on cross-examination: (1) U was referred to the department in August, 2000, for failing

to provide medication for sickle cell anemia to one of the victim's half-brothers; (2) the department removed the anemic child from U's custody from November, 2000, to July, 2001; and (3) at the time of the victim's injuries, U again neglected to provide medical care for the anemic child. The defendant claimed that this evidence was relevant to U's credibility because it suggested a motive for testifying falsely about her involvement in the injury to avoid losing custody of the victim. He also claimed that it was relevant as tending to show that U had caused the injury to the victim and that she has a pattern of behavior of not caring properly for her children. The prosecutor argued that the evidence was improper because it was too remote in time, would lead to a "trial within a trial" and did not impeach U's credibility, truthfulness or reliability and because the evidence involved a different child and a different behavior, namely, failing to provide medication versus physical abuse. In addition, the prosecutor asserted that the evidence was not relevant because it did not tend to prove the defendant's assertion that U was the actual perpetrator of the victim's injuries. The court subsequently denied the motion in an oral ruling.

At trial, the court, however, did allow the defendant to cross-examine U regarding the status of her children with the department at the time of trial. The defendant's cross-examination of U revealed that U had an ongoing case with the department, that all her children were in foster care at the time of trial, that she was "working hard" to be in a position to get her children returned to her, that she was "very anxious" to get her children back and that she would not "want to do or say anything that might jeopardize [her] getting [her] children back."

A

The defendant argues that the preclusion of the proffered evidence, regarding U's failure to provide medication to one of her other children, negatively impacted

his constitutional right to confront witnesses because it was critical to show U's motive to testify in a manner that would not implicate her in the injury. We disagree.

"The sixth amendment . . . guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . . As an appropriate and potentially vital function of cross-examination, exposure of a witness' motive, interest, bias or prejudice may not be unduly restricted. . . . Compliance with the constitutionally guaranteed right to cross-examination requires that the defendant be allowed to present the jury with facts from which it could appropriately draw inferences relating to the witness' reliability. . . . [P]reclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements of the sixth amendment. . . . In determining whether such a violation occurred, [w]e consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Internal quotation marks omitted.) *State* v. *Osimanti*, 111 Conn. App. 700, 708, 962 A.2d 129 (2008), cert. granted on other grounds, 290 Conn. 914, 965 A.2d 554 (2009).

"Generally, under the constitutional right to confrontation, a defendant is allowed broad latitude to test the veracity and credibility of the witnesses testifying against him. . . . The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole

triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . Only relevant evidence may be elicited through cross-examination. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable." (Internal quotation marks omitted.) *State* v. *Bardliving*, 109 Conn. App. 238, 247–48, 951 A.2d 615, cert. denied, 289 Conn. 924, 958 A.2d 153 (2008).

We conclude that the evidence relating to U's failure to provide medication to one of her other children was precluded properly. First, U was never charged with or apparently even suspected of having caused the injury to the victim's hand. Second, U never accused the defendant of having caused the injury or testified that she knew who had caused the injury or when or how it had occurred. Her testimony was, in effect, that she did not know how the injury had occurred and that she called for assistance as soon as she had discovered it. Evidence that she had not provided medicine to another child, therefore, would not have assisted the jury in assessing the credibility of U's testimony that she did not know the cause of the injury but called for medical assistance when she discovered it.

Moreover, the court enabled the defendant to cross-examine U on the status of her children with the department. The defendant's cross-examination disclosed that all of her children were in foster care at the time of trial, that she was working toward their return, that she was anxious to get her children back and that she would not want to do or say anything that may prevent their return. Thus, the court allowed sufficient inquiry into U's potential bias or motive to lie.

B

The defendant also claims that the preclusion of the proffered evidence showing that U had failed to provide

medication for one of her children violated his constitutional right to present a defense because such evidence tends to show that U might have caused the burn to the victim's hand and failed to seek medical help promptly. We disagree.

"The sixth amendment to the United States constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . Generally, [a defendant] must comply with established rules of procedure and evidence in exercising his right to present a defense. . . . A defendant, therefore, may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated. . . . Finally, [t]he determination of whether a matter is relevant . . . rests within the sound discretion of the trial court." (Citation omitted; internal quotation marks omitted.) *State* v. *Wright*, 273 Conn. 418, 424–25, 870 A.2d 1039 (2005).

"It is well established that a trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . The proferring party bears the burden of establishing the relevance of the offered testimony. Unless a proper foundation is established, the evidence is irrelevant. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Vines*, 71 Conn. App. 359, 366, 801 A.2d 918, cert. denied, 261 Conn. 939, 808 A.2d 1134 (2002).

One difficulty with the defendant's argument is that no evidence was presented at trial that tended to prove

that U had caused the injury.[8] Second, it was U who called for medical assistance. Therefore, we cannot agree that evidence of a failure to provide medication for a medical condition of another child would tend to show that U caused the burn to the victim and failed to obtain medical assistance promptly. Thus, the court did not abuse its discretion in precluding the proffered evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

[8] In addition, the proffered evidence was precluded properly on a theory of third party culpability. See *State* v. *Francis,* supra, 267 Conn. 174 ("[t]hird party suspect evidence is admissible if it *directly* connects the third party to the crime" [emphasis in original; internal quotation marks omitted]).